# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| STRADA ITALIA USA, INC. d/b/a IBO REFERRAL NETWORK, MERCHANTACCESS.IO, INC., MARIO MICHETTI, TYLER MICHETTI, and IAN M. CALLANDER, | Case No.: _____ <br><br> Jury Trial Demanded |
| Plaintiffs, | |
| v. | |
| LEON APEL, individually, and PERKWIZ INC. d/b/a RETRYHUB, | |
| Defendants. | |
| _____/ | |

**COMPLAINT AND DEMAND FOR A JURY TRIAL; DECLARATORY RELIEF REQUESTED; PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**

Plaintiffs Strada Italia USA, Inc. d/b/a IBO Referral Network, MerchantAccess.IO, Inc., Mario Michetti, Tyler Michetti, and Ian M. Callander, by and through undersigned counsel, sue Defendants Leon Apel and PerkWiz Inc. d/b/a RetryHub, and allege:

**NATURE OF THE ACTION**

1. This is an action for defamation per se, tortious interference with business relationships, business disparagement, declaratory relief, preliminary injunctive

relief, and permanent injunctive relief arising from a targeted online publication campaign directed at Florida merchant-services, advertiser, e-commerce, referral, and payment-processing businesses and their principals. Plaintiffs reserve the right to seek temporary restraining relief by separate motion if Defendants continue to publish, republish, delete, alter, or further disseminate the defamatory materials or if emergency circumstances otherwise require immediate relief.

2. Defendants did not merely express dissatisfaction or opinion. They published and republished statements of purported fact accusing Plaintiffs of theft, embezzlement, misappropriation of funds, scamming merchants, blocking bank access, blacklisting industry participants, destroying businesses, and engaging in other criminal, dishonest, and unethical business conduct.

3. The defamatory publications were made in public and semi-public industry-facing chat groups, including Telegram groups populated by merchants, advertisers, independent sales organizations, payment-processing participants, referral sources, and actual or prospective customers of Plaintiffs.

4. The defamatory publications identify the corporate Plaintiffs by the business names Strada Italia, IBO Referral Network, IBORN, MerchantAccess.io, and related operating names, and identify the individual Plaintiffs Mario Michetti, Tyler Michetti, and Ian M. Callander by name and by their roles in the businesses.

2

5. The defamatory publications are defamatory per se under Florida law because they impute criminal and dishonest conduct to Plaintiffs and directly prejudice Plaintiffs in their trade, business, and profession.

6. The campaign has caused concrete business injury. A potential advertiser/customer confirmed that he received the same defamatory Google Doc being circulated by Defendants, stated that he was told IBORN was a scam, paused and cancelled the relationship, and requested a refund. Plaintiffs estimate that relationship alone represented a minimum lifetime gross loss of approximately $22,500 and a reasonably expected loss of approximately $90,000 if the advertiser worked with multiple merchants as typical advertisers do.

7. Plaintiffs file with this Complaint the documents, screenshots, and records referenced below as Exhibits A through H.

## PARTIES

8. Plaintiff Strada Italia USA, Inc. is a Florida corporation with its principal place of business in Lee County, Florida. Strada Italia USA, Inc. does business as IBO Referral Network and is also known as IBORN.

9. Plaintiff MerchantAccess.IO, Inc. is a Florida corporation with its principal place of business in Lee County, Florida. MerchantAccess.IO, Inc. operates in the merchant-services, advertiser, e-commerce, referral, and payment-processing

ecosystem and is associated with the MerchantAccess.io business identity targeted in Defendants' publications.

10. Plaintiff Mario Michetti is an individual domiciled in Lee County, Florida. He is a principal of Strada Italia USA, Inc. and MerchantAccess.IO, Inc. and was identified by Defendants by name and by role in connection with IBORN, Strada Italia, MerchantAccess.io, and related business operations.

11. Plaintiff Tyler Michetti is an individual domiciled in Lee County, Florida. He is associated with Strada Italia USA, Inc., IBORN, MerchantAccess.IO, Inc., and/or related business operations and was identified by Defendants by name and by role in connection with those business operations.

12. Plaintiff Ian M. Callander is an individual domiciled in Pasco County, Florida. He is associated with Strada Italia USA, Inc., IBORN, MerchantAccess.IO, Inc., and/or related business operations and was identified by Defendants by name and by role in connection with those business operations.

13. Defendant Leon Apel is an individual who, on information and belief, is a citizen or subject of Canada and is not a lawful permanent resident domiciled in Florida. Apel conducts or has conducted business through PerkWiz Inc. d/b/a RetryHub. Apel uses and/or has used the last known United States business and mailing address 304 S. Jones Blvd. #8779, Las Vegas, Nevada 89107; the e-mail address scaleprivate@gmail.com; the Telegram handle @lapel23; and public-

4

facing RetryHub identities in connection with the conduct alleged in this Complaint.

14. Defendant PerkWiz Inc. is a Delaware corporation that, on information and belief, maintains its principal place of business in Nevada, including at or through 304 S. Jones Blvd. #8779, Las Vegas, Nevada 89107. PerkWiz Inc. does business as, holds itself out through, or has adopted the business identity RetryHub. PerkWiz Inc. may be served through its Delaware registered agent and/or by any other method authorized by law. See Exhibit A.

15. On information and belief, Apel is an officer, director, owner, manager, agent, representative, apparent agent, and/or controlling person of PerkWiz Inc. and its RetryHub business identity. Delaware corporate materials and business-identity materials identify PerkWiz Inc. as a Delaware corporation, tie PerkWiz to the Las Vegas business address, and identify Apel as the advertiser signer associated with PerkWiz Inc., scaleprivate@gmail.com, and the Telegram handle @lapel23. See Exhibit A.

16. At all material times, Apel acted individually and/or as an owner, officer, director, agent, representative, apparent agent, or alter ego of PerkWiz Inc. d/b/a RetryHub. Defendants used the Telegram identity "Leon - RETRYHUB" to publish, republish, adopt, endorse, and circulate the defamatory statements described below.

5

17. To the extent RetryHub is not a separately registered entity, Plaintiffs plead that Apel and/or PerkWiz Inc. used RetryHub as a trade name, fictitious name, brand, commercial persona, or d/b/a through which the defamatory publications were made. Plaintiffs further plead these agency, apparent-authority, ratification, alter-ego, and d/b/a theories in the alternative pending discovery into the exact legal relationship among Apel, PerkWiz Inc., and RetryHub.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. Plaintiffs are citizens of Florida for diversity purposes. Plaintiffs Mario Michetti and Tyler Michetti are domiciled in Lee County, Florida. Plaintiff Ian M. Callander is domiciled in Pasco County, Florida. Plaintiff Strada Italia USA, Inc. is a citizen of Florida because it is incorporated in Florida and maintains its principal place of business in Lee County, Florida. Plaintiff MerchantAccess.IO, Inc. is a citizen of Florida because it is incorporated in Florida and maintains its principal place of business in Lee County, Florida.

20. Defendant Leon Apel is, on information and belief, a citizen or subject of Canada and is not a lawful permanent resident domiciled in Florida. Defendant PerkWiz Inc. is a citizen of Delaware and Nevada for diversity purposes because it

6

is incorporated in Delaware and, on information and belief, maintains its principal place of business in Nevada. Plaintiffs will seek jurisdictional discovery if any Defendant disputes the citizenship allegations necessary to establish complete diversity.

21. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs seek compensatory damages, presumed general damages for defamation per se, special damages, damages for tortious interference and business disparagement, punitive damages, declaratory relief, and preliminary and permanent injunctive relief. Plaintiffs presently estimate actual, concrete, and reasonably anticipated losses exceeding $150,000, and in any event exceeding $75,000, before accounting for the full value of presumed reputational damages, punitive damages, goodwill loss, corrective measures, and injunctive relief.

22. This Court has personal jurisdiction over Defendants under Florida's long-arm statute and constitutional due process because Defendants committed intentional torts directed at Florida Plaintiffs, published defamatory statements that were accessed in Florida, targeted Florida residents and Florida businesses, and caused injury in Florida, including in Lee County, Florida.

23. Defendants knew or reasonably should have known that Plaintiffs were located in Florida, that the corporate Plaintiffs operated from Florida, that the individual

Plaintiffs lived and worked in Florida, and that the injury from the defamatory and interfering publications would be felt in Florida.

24. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiffs suffered injury in this District, Defendants directed tortious conduct into this District, and the action is substantially connected to Lee County, Florida.

25. Under Local Rule 1.04, Lee County is in the Fort Myers Division of the Middle District of Florida. This action is therefore properly filed in the Fort Myers Division.

## FACTUAL ALLEGATIONS

26. Plaintiffs provide merchant-services, advertiser, e-commerce, referral, and payment-processing-related services through or in connection with the business identities Strada Italia, IBO Referral Network, IBORN, MerchantAccess.io, and related operating names.

27. Plaintiffs depend on reputation, trust, processing relationships, advertiser relationships, merchant relationships, ISO relationships, banking relationships, and referral sources. False accusations of theft, embezzlement, scamming, misappropriation, blacklisting, or bank-account misconduct are especially damaging in Plaintiffs' industry.

28. Apel and PerkWiz had prior commercial connections with Plaintiffs or Plaintiffs' platform. Among other things, PerkWiz and Apel participated in or were associated with a joint-venture relationship involving Defodio Media Inc. Apel was the signer or representative associated with PerkWiz in that relationship. PerkWiz business materials identify PerkWiz Inc. as the advertiser corporation, Leon Apel as the advertiser signer, the Las Vegas business address, scaleprivate@gmail.com, and Telegram username @lapel23. See Exhibit A.

29. Apel also was associated with or claimed authority to speak for, manage, or participate in advertiser relationships involving Spineff LLC, Nicolas Sengiali, Apollo Moons Inc., and Jupiter Tango Inc. Plaintiffs' platform and related merchants later terminated or ended certain relationships involving Apel, PerkWiz, Spineff, or related advertisers based on risk, compliance, merchant-account events, and other business concerns.

30. The termination and related business disputes created motive for Apel and PerkWiz/RetryHub to retaliate against Plaintiffs by accusing them of stealing or misappropriating money, withholding reserves, scamming merchants, and destroying businesses.

31. Plaintiffs deny that they stole, embezzled, misappropriated, or wrongfully withheld any funds. Plaintiffs further deny that Apel, PerkWiz, or any advertiser was the rightful recipient of funds that belonged to merchants or were held or

applied to address merchant-related chargebacks, fees, overdrafts, creditor claims, or risk exposure.

32. Plaintiffs also deny that they unlawfully controlled bank accounts or blocked bank access. To the extent any bank access, account access, merchant-account access, ticketing access, or reserve issue existed, Plaintiffs contend those matters arose from the termination of commercial relationships, merchant risk, chargebacks, fee obligations, or contractual rights, not theft, embezzlement, misappropriation, or criminal conduct.

33. Beginning at least in 2025, Apel, PerkWiz, and/or RetryHub published and republished a document titled "IBO Referral Network (IBORN) Complaint: Ian M Callandar, Mario Michetti, and Tyler Michetti" and variations of that document through Google Docs, Telegram, X/Twitter, and/or other online channels. See Exhibit B.

34. The Google Doc referenced as Exhibit B expressly targets IBO Referral Network, IBORN, Strada Italia, the current MerchantAccess.io business identity, and individual Plaintiffs Mario Michetti, Tyler Michetti, and Ian M. Callander.

35. Exhibit B states, among other things, that IBORN had "multiple victims," that victims reported "theft, blacklisting, and business destruction," that IBORN engaged in "financial misconduct," that IBORN withdrew $11,250 without authorization, that IBORN refused to cooperate on releasing approximately

$100,000 in owed reserves, that IBORN engaged in threats, false accusations, and blacklisting, and that IBORN had a "pattern of behavior" involving sudden account closures, fund misappropriation, and reputational sabotage.

36. Exhibit B further states or implies that Plaintiffs stole money, embezzled funds, misappropriated funds, destroyed businesses, ruined livelihoods, wrongfully locked others out of bank accounts, cut off access to accounting systems, and engaged in repeated unethical and criminal conduct.

37. Exhibit B identifies the individual Plaintiffs by name as alleged "key players." It identifies Tyler Michetti as Vice President of IBO Referral Network. It identifies Mario Michetti as associated with the operating company behind IBORN and accuses him of threatening people. It identifies Ian M. Callander as a person allegedly positioning himself as a moral authority while supposedly covering tracks or redirecting blame.

38. Exhibit B was later updated or republished to state, "Updates in 2026: 1. They rebranded as merchantaccess.io/." This update republished the accusations and directed them at Plaintiffs' current MerchantAccess.io business identity.

39. On or about July 13, 2025, Defendant Apel, using the public-facing Telegram account name "Leon - RETRYHUB," published and/or republished the defamatory Google Doc in an industry-facing Telegram group known as "Advertiser Blacklist" or "Advertiser Blacklist [Public]" (Exhibit C).

11

40. In the July 13, 2025, publication referenced as Exhibit C, Apel did not merely provide a neutral hyperlink. Apel independently summarized, adopted, endorsed, and amplified the defamatory accusations. Apel warned the group that before engaging with Ian Callander, whom Apel described as positioning himself as a "moral authority," participants should review a document about IBO Referral Network. Apel stated that the document reported "multiple victims" and included "massive misappropriation of funds," blacklisting, and total business ruin.

41. In the same publication referenced as Exhibit C, Apel repeated or adopted the summary that IBORN had withdrawn $11,250 without authorization, refused to release approximately $100,000 in owed reserves, used threats and false accusations, blacklisted contacts, locked users out of accounts or view access, misappropriated funds, and engaged in reputational sabotage.

42. On another occasion, using the "Leon - RETRYHUB" identity, Apel published a message stating that, after many complaints about IBO Referral Network "scamming multiple merchants," IBORN appeared to have rebranded from iboreferralnetwork.com to merchantaccess.io. Apel posted or linked the same Google Doc and wrote that close to "~10 random merchants" had told him they were scammed by Mario Michetti, Tyler Michetti, and/or Ian M. Callander (Exhibit D).

43. In the same publication referenced as Exhibit D, Apel also stated or implied that if advertisers let Plaintiffs process large sums, Plaintiffs would "clean their bank account" and would not return the money. These statements are false and defamatory.

44. On or about August 9, 2025, Defendants published and republished additional defamatory statements through the public-facing RetryHub identity on X/Twitter. In a public post by "Retry Hub" / "@RetryHub," Defendants warned about "IBO Referral Network (IBORN) / Strada Italia Inc." and stated that "multiple victims" reported "theft of funds" and "blocking bank view access." The publication identified Ian M. Callander, Mario Michetti, and Tyler Michetti by name and linked readers to the defamatory Google Doc. See Exhibit E.

45. Defendants also published substantially similar statements in the public Telegram group "Advertiser Blacklist [Public]," a group with more than one thousand members. Posting under the identity "Leon - RETRYHUB," Apel stated that IBO Referral Network "misappropriated funds" and "blocked bank access," accused Plaintiffs of "logic to steal," claimed he had delayed publication of an "expose" to give Plaintiffs a chance to "return the stolen funds," and further stated that Plaintiffs took "$5000 embezzled," took "another $6000," and "seized reserves worth ~$100k." See Exhibit E.

13

46. The Exhibit E Telegram publication identified Ian Callander and Mario Michetti by name, described Mario Michetti as owner of Strada Italia Inc. d/b/a IBORN, and was published in an industry-facing public forum intended to reach merchants, advertisers, ISOs, payment-processing participants, vendors, referral sources, and actual or prospective customers.

47. The "Leon - RETRYHUB," "RetryHub," and "Retry Hub / @RetryHub" publications are attributable to Apel individually because they were made under his name or business identity and are consistent with his direct communications to Plaintiffs' counsel. The publications are also attributable to PerkWiz Inc. d/b/a RetryHub because they were made under the RetryHub business identity and within the same commercial ecosystem in which PerkWiz, Apel, and RetryHub operated.

48. Apel also communicated directly with Plaintiffs' counsel using the e-mail address scaleprivate@gmail.com and identified himself as Leon Apel. In that same chain, Apel linked the scaleprivate@gmail.com address to RetryHub through a tidycal.com/retryhub/private-invitation link. In the same correspondence, Apel asserted that Plaintiffs had misappropriated funds, demanded release of alleged reserved funds, demanded restitution and fee waivers, and threatened to involve regulators, banks, and industry participants if his demands were not met. See Exhibit F.

49. Plaintiffs dispute and deny Apel's accusations. Apel's direct communications establish his identity, notice of the dispute, motive, and knowledge of Plaintiffs' position that the accusations of theft, misappropriation, and scamming were false.

50. Plaintiffs' counsel sent Apel a formal cease-and-desist letter dated August 21, 2025, by civil process server and e-mail, including to scaleprivate@gmail.com and the Las Vegas address associated with Apel (Exhibit G). The letter identified the defamatory publications, stated that Plaintiffs categorically rejected the accusations as false, demanded cessation, removal, retraction, apology or corrective statement, and preservation of evidence, and warned that Plaintiffs would pursue claims for defamation per se, business disparagement, tortious interference, injunctive relief, compensatory damages, punitive damages, and other relief.

51. Despite actual notice that Plaintiffs denied the accusations and considered them defamatory, Defendants continued to publish, republish, endorse, and circulate the defamatory statements, including through the RetryHub identity and the Google Doc.

52. The defamatory publications foreseeably spread to customers, prospective customers, business partners, accountants, advertisers, merchants, ISOs, payment-processing participants, and other industry participants.

53. In or around October 2025, a potential advertiser/customer associated with IFGA Ventures and/or related merchant-user onboarding informed Plaintiffs that

he had received multiple messages from friends saying IBORN was a scam and that he should steer clear. The advertiser stated that he would pause or cancel the relationship because he was not comfortable moving forward while the defamatory accusations remained unresolved. See Exhibit H.

54. In the same exchange referenced as Exhibit H, Gabriel confirmed that he had been sent a Google Doc containing "multiple cases of stolen money." When Plaintiffs asked whether the document was the same Google Doc that Defendants had been circulating, Gabriel confirmed that it was "Correct."

55. As a result of receiving and relying on the defamatory publications referenced in Exhibits B through H, the advertiser cancelled or paused the business relationship and requested a refund. Plaintiffs then wound down the account and agreed to refund startup funds. This lost relationship caused direct economic harm and is one concrete example of Defendants' successful interference with Plaintiffs' business relationships. See Exhibit H.

56. Plaintiffs estimate that the IFGA/Gabriel-related lost relationship caused a minimum direct loss of a refunded $2,500 contract payment, plus a $17,500 remaining first-contract value, and approximately $60,000 in reasonably anticipated lost lifecycle value based on the ordinary-course expectation that an advertiser of that type connects with multiple merchant users.

57. Plaintiffs have also suffered additional concrete business losses and mitigation costs arising from Defendants' wrongful course of conduct and related interference, including: approximately $7,500 in lost contract payments and approximately $30,000 in covered or mitigated bad debts associated with the PerkWiz/Defodio relationship; approximately $2,500 in lost contract payments associated with the Spineff/Apollo relationship; approximately $20,000 associated with the Spineff/Jupiter relationship; and losses and mitigation costs associated with the Yumni/Guava Fern relationship, including a $20,000 contract value and at least $10,000 in legal retainer payments advanced in good faith to protect an affected merchant.

58. Plaintiffs presently estimate their actual, concrete, and reasonably anticipated business losses and mitigation costs to exceed $150,000 and, in any event, to exceed $75,000. This estimate does not include the full value of presumed and actual reputational damages arising from defamation per se, the value of goodwill lost in the industry, the value of corrective and reputational repair efforts, punitive damages, or the value of preliminary and permanent injunctive relief necessary to stop Defendants' continuing defamatory campaign.

59. Those downstream publications and threats were a foreseeable consequence of Defendants' original publications and republications. Defendants published in

public and semi-public industry groups precisely so that merchants, advertisers, ISOs, processors, and business partners would avoid doing business with Plaintiffs.

60. Defendants' publications are materially false. Plaintiffs did not steal funds, embezzle funds, misappropriate funds, scam merchants, engage in criminal financial misconduct, wrongfully block bank access, blackmail or blacklist merchants, destroy businesses, or engage in the dishonest and unethical conduct described in the defamatory publications.

61. Defendants' statements are not protected opinion, rhetorical hyperbole, or mere consumer dissatisfaction. They assert provably false facts about specific alleged misconduct: unauthorized withdrawals, stolen funds, misappropriated funds, embezzled funds, bank access being blocked, reserves being wrongfully withheld, multiple victims, destruction of businesses, and scamming merchants.

62. Defendants published the statements with at least negligence and, in many instances, with actual malice and express malice. Defendants knew the statements were false or acted with reckless disregard for their truth or falsity because Apel had direct knowledge of the underlying commercial dispute, had been told Plaintiffs disputed the allegations, had received counsel's cease-and-desist notice, and nevertheless continued to publish the accusations as purported facts.

63. Defendants also acted with intent to harm Plaintiffs' commercial relationships. Defendants' publications expressly instructed industry participants not to engage

18

with Plaintiffs, warned them to protect themselves from Plaintiffs, and were published in groups designed to influence advertisers, merchants, ISOs, processors, and referral sources.

64. Plaintiffs are private parties. Defendants are not media defendants. The defamatory statements concern a private commercial dispute and private business relationships, not a matter of public concern. The statements were published to damage Plaintiffs' business reputation and relationships within a commercial industry ecosystem.

65. The defamatory statements are "of and concerning" each Plaintiff. They identify IBORN, IBO Referral Network, MerchantAccess.io, Strada Italia, and Strada Italia USA Inc. by name or by unmistakable business identity. They identify Mario Michetti, Tyler Michetti, and Ian M. Callander by name and roles. A reasonable recipient would understand the statements to refer to the corporate Plaintiffs and the individual Plaintiffs personally.

66. The defamatory statements have harmed Plaintiffs' reputation, goodwill, standing, relationships, and business opportunities. Plaintiffs have suffered presumed general damages, actual damages, special damages, lost revenue, lost customers, lost business relationships, corrective expenses, and damages to goodwill and reputation.

67. Plaintiffs' defamation claims are timely under Fla. Stat. § 95.11(5)(h), which provides a two-year limitations period for libel or slander. Defendants published and republished the defamatory statements within two years of this action, including, without limitation: the July 13, 2025 "Leon - RETRYHUB" Telegram publication attaching and adopting the defamatory Google Doc; the July 2025 "Leon - RETRYHUB" rebrand/scam publication concerning MerchantAccess.io; the August 9, 2025 RetryHub/X publication accusing Plaintiffs of theft of funds and blocked bank access; additional August 2025 Telegram publications accusing Plaintiffs of misappropriation, embezzlement, stolen funds, and seized reserves; the October 2025 circulation of the defamatory Google Doc to Gabriel/IFGA that caused cancellation or pause of a business relationship; and the 2026 update or republication tying the accusations to MerchantAccess.io. Each publication, republication, adoption, endorsement, link, update, and material redistribution caused new reputational and business harm.

**COUNT I - DEFAMATION PER SE AGAINST ALL DEFENDANTS**

68. Plaintiffs incorporate paragraphs 1 through 67 as if fully set forth in this Count.

69. Under Florida common law, a defamation claim requires: (a) publication; (b) falsity; (c) fault amounting at least to negligence on a matter concerning a private plaintiff; (d) actual damages unless the statement is actionable per se; and (e) a statement of and concerning the plaintiff. See *Jews for Jesus, Inc. v. Rapp,* 997 So.

20

2d 1098, 1106-08 (Fla. 2008); *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1342-44 (M.D. Fla. 2006).

70. Florida recognizes defamation per se where the challenged statements impute criminal conduct or conduct incompatible with the proper exercise of a lawful business, trade, profession, or office. See *Richard v. Gray,* 62 So. 2d 597, 598 (Fla. 1953); *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953); *Border Collie Rescue,* 418 F. Supp. 2d at 1344-45.

71. Because the publications accuse Plaintiffs of theft, embezzlement, misappropriation of funds, scamming merchants, blocked bank access, stolen funds, and dishonest financial misconduct in Plaintiffs' industry, the publications are actionable as defamation per se, and general damages are presumed subject to applicable First Amendment and Florida-law limitations. See *Richard*, 62 So. 2d at 598; *Campbell*, 66 So. 2d at 497.

72. Plaintiffs' defamation claims are timely under Fla. Stat. § 95.11(5)(h). The actionable publications and republications occurred within that limitations period, including on or about July 13, 2025, through additional July 2025 Telegram publications, on or about August 9, 2025, through additional August 2025 Telegram publications, in October 2025 when the defamatory Google Doc was circulated to Gabriel/IFGA, and through the 2026 update or republication tying the accusations to MerchantAccess.io.

21

73. Defendants published false statements of fact about Plaintiffs to third parties, including merchants, advertisers, ISOs, processors, referral sources, industry participants, potential customers, and actual customers.

74. The false statements include, without limitation, statements that Plaintiffs stole funds, embezzled funds, misappropriated funds, scammed merchants, withdrew funds without authorization, refused to release approximately $100,000 in reserves, blocked bank access, locked users out of accounts, blacklisted merchants or contacts, destroyed businesses, and engaged in a pattern of dishonest and criminal business conduct.

75. The statements were of and concerning Plaintiffs because they identified the corporate Plaintiffs' business names and identified the individual Plaintiffs Mario Michetti, Tyler Michetti, and Ian M. Callander by name and by their roles in the businesses.

76. The statements are false. Plaintiffs did not engage in the theft, embezzlement, misappropriation, scamming, bank-access misconduct, blacklisting, business destruction, or other criminal or dishonest conduct alleged by Defendants.

77. The statements are defamatory per se because they impute to Plaintiffs criminal conduct and serious dishonest financial misconduct, including theft, embezzlement, fraud, and misappropriation of funds.

22

78. The statements are also defamatory per se because they directly prejudice Plaintiffs in their trade, business, and profession by accusing them of conduct incompatible with operating merchant-services, advertiser, e-commerce, referral, and payment-processing businesses.

79. Defendants published the statements at least negligently and, in fact, with actual malice, express malice, and reckless disregard for the truth. Defendants had actual notice that Plaintiffs disputed and denied the accusations, had knowledge of the underlying commercial disputes, and continued to publish and republish the accusations as fact.

80. As a direct and proximate result, Plaintiffs have suffered presumed general damages, actual damages, special damages, lost business, lost revenue, harm to reputation and goodwill, humiliation and reputational injury to the individual Plaintiffs, and the costs of corrective measures.

81. Because the statements constitute defamation per se, Plaintiffs are entitled to presumed damages under Florida law, in addition to all actual damages Plaintiffs can prove.

82. Defendants' conduct was intentional, malicious, willful, wanton, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages to the extent permitted by Florida law and applicable federal procedure.

## COUNT II - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AGAINST ALL DEFENDANTS

83. Plaintiffs incorporate paragraphs 1 through 67 as if fully set forth in this Count.

84. Under Florida law, the elements of tortious interference with a business relationship are: (a) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (b) the defendant's knowledge of the relationship; (c) intentional and unjustified interference with the relationship; and (d) damage resulting from the interference. See *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

85. The relationship must be with identifiable customers, prospective customers, or business partners, not merely the community at large. See *Ethan Allen*, 647 So. 2d at 815; *Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821, 821-22 (Fla. 1996).

86. The corporate Plaintiffs and the individual Plaintiffs, through their business roles and reputational interests, had existing and prospective business relationships with merchants, advertisers, ISOs, processors, referral sources, accountants, customers, prospective customers, and industry partners, including identifiable relationships reflected in the Tangerine Fieldz Inc./PurelyNutra LLC/Gabriel thread.

24

87. These relationships were not speculative relationships with the community at large. They included identifiable business relationships and prospective relationships with specific advertisers, merchant accounts, customers, and referral partners who were in active communications with Plaintiffs or Plaintiffs' representatives.

88. Defendants knew of these relationships or, at minimum, knew of relationships of this type because Defendants published the defamatory statements in industry-facing groups specifically populated by the merchants, advertisers, ISOs, processors, referral sources, and customers with whom Plaintiffs conduct business.

89. Defendants intentionally and unjustifiably interfered with Plaintiffs' business relationships by publishing defamatory statements accusing Plaintiffs of theft, misappropriation, scamming, blacklisting, and business destruction, and by encouraging industry participants to avoid doing business with Plaintiffs.

90. Defendants' interference was intentional and improper. Defendants acted out of malice, retaliation, competitive or commercial animus, leverage over disputed funds, and a desire to damage Plaintiffs' business reputation and relationships.

91. The Gabriel advertiser relationship was disrupted as a direct result of Defendants' publications. Gabriel confirmed that he received the same Google Doc and had been told IBORN was a scam, and he cancelled or paused the relationship and requested a refund (Exhibit H).

25

92. As a direct and proximate result of Defendants' interference, Plaintiffs suffered damages, including lost revenue, lost business opportunities, refunds, lost lifetime value of customer and advertiser relationships, reputational harm, and corrective costs. The Gabriel relationship alone is reasonably valued at approximately $22,500 minimum lifetime gross value and approximately $90,000 expected lifetime gross value under ordinary business assumptions.

93. Defendants' conduct was intentional, malicious, willful, wanton, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages to the extent permitted by Florida law and applicable federal procedure.

## COUNT III - BUSINESS DISPARAGEMENT / INJURIOUS FALSEHOOD AGAINST ALL DEFENDANTS

94. Plaintiffs incorporate paragraphs 1 through 67 as if fully set forth in this Count.

95. Florida recognizes business disparagement and injurious falsehood where a defendant publishes a false statement concerning the plaintiff's business, property, product, services, or commercial interests, with malice or reckless disregard, causing special damages or pecuniary loss. See *Bothmann v. Harrington,* 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984); *Harllee v. Professional Service Industries, Inc.,* 619 So. 2d 298, 300 (Fla. 3d DCA 1992); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 386-87 (Fla. 4th DCA 1999).

96. Unlike defamation per se, business disparagement and injurious falsehood require pleaded pecuniary loss or special damages. Plaintiffs plead those losses

26

through the identifiable advertiser/customer relationships, refunds, lost contract values, lost lifecycle values, bad-debt mitigation, legal-retainer mitigation, and corrective costs described above.

97. Defendants published false statements concerning Plaintiffs' businesses, services, commercial reputation, financial integrity, merchant relationships, advertiser relationships, and fitness to operate in the merchant-services and payment-processing ecosystem.

98. The false statements included claims that Plaintiffs and their principals stole funds, misappropriated funds, withheld reserves, scammed merchants, blocked bank access, blacklisted contacts, and destroyed businesses.

99. Defendants knew the statements were false or acted with reckless disregard for their truth or falsity. Defendants had direct knowledge of the underlying commercial disputes and received notice from Plaintiffs' counsel that the accusations were false and defamatory.

100. Defendants published the statements with malice and with the intent or reasonable expectation that third parties would avoid doing business with Plaintiffs.

101. The statements were calculated to prevent others from dealing with Plaintiffs and did prevent others from dealing with Plaintiffs, including the Gabriel

advertiser relationship and other industry relationships disrupted by the publications referenced in Exhibit H.

102. Plaintiffs have suffered special damages, including identifiable lost business, lost revenue, lost lifetime value, refunded payments, covered or mitigated bad debts, legal-defense or mitigation costs advanced to protect affected merchant relationships, and corrective costs. Plaintiffs presently identify the IFGA/Gabriel-related relationship and the other business-loss categories described above as specific instances of economic damage.

103. As a direct and proximate result of Defendants' business disparagement and injurious falsehoods, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

**COUNT IV - DECLARATORY RELIEF AGAINST ALL DEFENDANTS**

104. Plaintiffs incorporate paragraphs 1 through 67 as if fully set forth in this Count.

105. Declaratory relief is authorized by 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, and Florida's Declaratory Judgment Act, Chapter 86, Florida Statutes, including sections 86.011, 86.101, and 86.111. These authorities permit a court to declare the parties' rights and legal relations in an actual controversy, and the existence of another adequate remedy does not preclude declaratory relief.

28

106. An actual, present controversy exists because Defendants have published, adopted, endorsed, and continued to circulate factual accusations that Plaintiffs stole funds, embezzled funds, misappropriated funds, scammed merchants, wrongfully withheld reserves, blocked bank access, and destroyed businesses, while Plaintiffs deny those accusations and seek a declaration of falsity and unlawfulness.

107. An actual, present, and justiciable controversy exists between Plaintiffs and Defendants concerning the truth or falsity of the defamatory statements, Defendants' right to continue publishing them, Plaintiffs' reputational and business rights, and the parties' legal responsibilities arising from Defendants' publications.

108. Defendants have asserted and continue to assert that Plaintiffs stole funds, misappropriated funds, scammed merchants, wrongfully withheld reserves, blocked bank access, blacklisted contacts, destroyed businesses, and engaged in criminal or dishonest conduct. Plaintiffs deny those accusations.

109. Declaratory relief will serve a useful purpose because Defendants continue to publish, republish, endorse, link, and circulate the defamatory accusations, and because the publications continue to harm Plaintiffs' reputation, goodwill, customer relationships, and business prospects.

110. Plaintiffs request a declaration that the statements described in this Complaint are false, defamatory, defamatory per se, and unlawfully published by Defendants,

29

and that Defendants have no legal right to continue publishing or republishing those adjudicated false statements as fact.

111. Plaintiffs further request a declaration that Defendants' publications were of and concerning Plaintiffs and caused harm to Plaintiffs' reputational and business interests.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

112. Plaintiffs incorporate paragraphs 1 through 67 as if fully set forth in this request.

113. Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions, including requirements for specificity, security, preservation of jury-trial rights, and the persons bound by an injunction or restraining order. See Fed. R. Civ. P. 65(a)-(d).

114. A preliminary injunction requires a showing of substantial likelihood of success on the merits, irreparable injury absent relief, that the threatened injury outweighs harm to the opposing party, and that the injunction is not adverse to the public interest. A permanent injunction requires success on the merits and the traditional equitable showing of irreparable injury, inadequacy of legal remedies, balance of hardships, and consistency with the public interest. See *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Angel Flight of Georgia, Inc. v.*

*Angel Flight America, Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008); *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).

115. Defendants' wrongful conduct is ongoing and threatens continuing harm to Plaintiffs' reputation, goodwill, customer relationships, merchant relationships, advertiser relationships, payment-processing relationships, referral sources, and business prospects.

116. Monetary damages alone are inadequate to fully remedy the continuing harm caused by repeated publication and republication of false accusations of theft, embezzlement, misappropriation, scamming, bank-account misconduct, and business destruction in industry-facing forums.

117. Plaintiffs seek narrowly tailored preliminary and permanent injunctive relief, including an order requiring Defendants to remove or cause removal of the false and defamatory statements from accounts, documents, posts, and channels under their possession, custody, or control; prohibiting Defendants from republishing the same or materially identical false factual statements; and requiring Defendants to issue a corrective retraction or correction in the same or substantially similar channels where Defendants published the statements.

118. Plaintiffs also reserve the right to seek temporary restraining relief and/or preliminary injunctive relief by separate motion under Federal Rule of Civil Procedure 65, the Local Rules of the Middle District of Florida, and any applicable

31

standing order if Defendants continue the defamatory campaign, threaten additional publication, delete or alter evidence, or otherwise create circumstances requiring immediate relief before final adjudication.

119. Plaintiffs do not seek an overbroad prior restraint on lawful speech, opinion, or truthful statements. Plaintiffs seek relief limited to false factual statements adjudicated or otherwise shown by competent evidence to be defamatory or unlawful, including statements that Plaintiffs stole funds, embezzled funds, misappropriated funds, scammed merchants, wrongfully withheld reserves, blocked bank access, or destroyed businesses.

120. Plaintiffs request that Defendants be ordered to preserve all evidence concerning the defamatory publications, including Telegram posts, account information, Google Docs materials, message links, edits, deleted messages, metadata, replies, shares, forwards, e-mails, WhatsApp messages, X/Twitter posts, and communications with merchants, advertisers, ISOs, processors, and referral sources concerning Plaintiffs.

121. The threatened injury to Plaintiffs outweighs any harm to Defendants from being prohibited from continuing to publish false factual statements of theft, embezzlement, misappropriation, scamming, and bank-account misconduct. The public interest favors truthful commercial communications and protection of

Florida businesses and residents from intentional defamatory publication campaigns.

122. To the extent injunctive relief is entered against PerkWiz Inc. d/b/a RetryHub, Plaintiffs request that the order apply to PerkWiz Inc., its officers, directors, agents, employees, representatives, and all persons in active concert or participation with it who receive actual notice of the order, consistent with Federal Rule of Civil Procedure 65.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, and award the following relief:

A. Compensatory damages in an amount to be determined by the jury;

B. Presumed general damages for defamation per se;

C. Special damages, including lost business, lost revenue, lost goodwill, lost customer and advertiser value, refunds, corrective costs, and other economic losses;

D. Punitive damages to the extent permitted by Florida law and applicable federal procedure, including after any evidentiary showing required under Fla. Stat. § 768.72 or other applicable authority;

E. A declaratory judgment that the challenged statements are false, defamatory, defamatory per se, and unlawfully published;

F. Preliminary injunctive relief pending adjudication and permanent injunctive relief after adjudication, including removal of false statements, prohibition on republication of the same or materially identical false/adjudicated false statements, preservation of evidence, and corrective retraction or correction in the same or substantially similar publication channels;

G. Prejudgment and postjudgment interest as allowed by law;

H. Taxable costs and attorneys' fees to the extent allowed by law, rule, contract, statute, or equitable doctrine;

I. Trial by jury on all issues so triable; and

J. Such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED: July 6, 2026.

**GOEDE, DEBOEST & CROSS, PLLC**
/s/ *John J. Truitt*
John J. Truitt, Esq.
Florida Bar No.: 92579
JTruitt@gadclaw.com
lbritt@gadclaw.com
6609 Willow Park Drive, Ste. 201
Naples, FL 34109
Phone No.: (239) 331-5100 ext. 113
*Attorney for Plaintiffs*

34